IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HAMDIJA (FRANK) NASUFI, individually and on behalf of others similarly situated, | § § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:15-cv-3273-B |
| KING CABLE, INC. and MANUEL GONZALEZ, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Non-Party DComm, Inc. has filed a Motion to Quash Amended Non-Party Subpoena to Produce Documents, *see* Dkt. No. 89-3 (the "Motion to Quash"), seeking an order under Federal Rule of Civil Procedure 45(d)(3) quashing an Amended Subpoena served on DComm by Plaintiff Hamdija (Frank) Nasufi.

United States District Judge Jane J. Boyle has referred the Motion to Quash to the undersigned United States magistrate judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 90.

Nasufi filed a response, *see* Dkt. No. 92, and DComm filed a reply, *see* Dkt. No. 89-1; and the Court determines that oral argument is not necessary.

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Non-Party DComm, Inc.'s Motion to Quash Amended Non-Party Subpoena to Produce Documents [Dkt. No. 89-3].

## Background

The Amended Subpoena, issued under Federal Rule of Civil Procedure 45, requires compliance by Dcomm, Inc. to produce responsive documents, electronically-stored information, and other tangible things by June 5, 2017 at a law office in Austin, Texas. *See* Dkt. No. 89-3; Dkt. No. 92-1. The United States District Court for the Western District of Texas transferred the Motion to Quash, filed on June 2, 2017, to this Court under Federal Rule of Civil Procedure 45(f). *See* Dkt. No. 89.

Nasufi explains that

> [t]his is a collective action for overtime pay and minimum wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") filed in the U.S. District Court for the Northern District of Texas, Dallas Division, 3:15-CV-03273. Plaintiff is one of 96 class members who worked for Defendant King Cable as independent contractor and employee cable technicians. Defendant Manuel Gonzales is King Cable's President.
> King Cable performed cable installation services for Time Warner Cable's customers. As a cable installation contractor, King Cable effectively needed four main things to operate: a contract with a cable provider like Time Warner, cable technicians to perform the work, trucks for the technicians to drive, and a warehouse/office.
> In late 2016 and early 2017, King Cable ceased operating, Defendants' counsel withdrew, and Gonzales filed for bankruptcy (Dkts. 53 and 65). Consequently, Gonzales has an automatic stay. King Cable stopped responding to communications from the Court and Plaintiff.
> DComm, Inc. – like King Cable – is a Time Warner Cable contractor. Since King Cable's closing and Gonzales's bankruptcy filing, it appears that DComm may be operating as King Cable's "successor":
> • Gonzalez – King Cable's President – accepted employment and is working with DComm as an independent contractor "Regional Mgr.";
> • An entity held by DComm's President and with the same address as Dcomm purchased King Cable's leased warehouse/offices located on Grisham Drive in Rowlett, TX;
> • DComm purchased the work trucks previously leased by King Cable; and
> • DComm, upon information and belief, hired King Cable's former cable technicians as independent contractor cable technicians.

On April 26, 2017 – before the expiration of the discovery cutoff deadline in the underlying action – Plaintiff served specific, time-limited, narrowly-tailored document requests on DComm's Dallas office. Plaintiff subsequently withdrew that subpoena and served an amended subpoena on DComm's Austin office on May 22, 2017 ("Subpoena") – again, before the discovery cutoff date.

Plaintiff served the Subpoena to discover whether DComm may be considered King Cable's "successor" under the FLSA. The Fifth Circuit Court of Appeals has assumed, without deciding, that the federal successorship doctrine applies to FLSA actions. *Powe v. May*, 62 Fed. Appx. 557 (5th Cir. 2003). Black's Law Dictionary does not determine "successor" status here. Under *Powe*, "[t]here are three main criteria for imposing successor liability: (1) a substantial continuity of business operations from the previous entity to its successor; (2) notice to the successor; and (3) the successor's ability to provide relief. *Id.* (citing *Rojas v. TK Communs.*, 87 F.3d 745, 750 (5th Cir. 1996)).

The [Amended] Subpoena ... is narrowly tailored to 15 document requests, subdivided by listed category, tracking the *Powe/Rojas* factors, to assess whether DComm may be considered King Cable's successor. The Subpoena afforded DComm 14 days to serve responsive documents – before the discovery cutoff in the underlying action.

Dkt. No. 92 at 1-3 (footnotes omitted).

DComm "moves to quash the Amended Subpoena on four (4) main grounds."

Dkt. No. 89-3 at 2.

- "First, the Amended Subpoena seeks documents that are not relevant in that the documents are not consequential to a fact related to its lawsuit against Defendant King."

- "Second, the Amended Subpoena subjects the non-party Movant to undue burden in attempting to gather the documents, assuming that such documents even exist, and comply. Such a request is unreasonable, vague and overbroad on its face. In addition, the same information requested from the non-party Movant is available from another party Defendant. (FRCP 45(d)(3)(A)(iv))."

- "Third, some of the documents to be produced are confidential and proprietary and/or are considered trade secrets, and therefore should be protected from discovery, and particularly from Plaintiff Nasufi.(FRCP 45(d)(3)(A)(iii))."
- "Finally, assuming that the scope of the Amended Subpoena is manageable and reasonable upon the non-party Movant (and not reasonably obtainable from the Defendant) and/or that the responsive documents are not privileged, the timing of the Amended Subpoena and the short time frame for response make compliance impossible. (FRCP 45(d)(3)(A)(i))."

*Id.*

DComm asserts that "[t]his Amended Subpoena to Produce Documents is [Nasufi's] second attempt at a fishing expedition by attempting to involve the non-party Movant in its litigation against the Defendant King Cable Inc. [Nasufi] is continuing to harass the non-party Movant as a means of conducting a fishing expedition for facts and other materials that the Plaintiff should have obtained by other means during the two (2) years that this litigation has been pending." *Id.*

> For example, it is obvious that the non-party Movant's Motion to Quash [Nasufi's] original subpoena enabled the Plaintiff to discover facts related to the ownership of Defendant King Cable. Facts such as the ownership of a Defendant party being sued are facts that should be ascertained by the Plaintiff prior to a Plaintiff filing their initial pleadings or during discovery.
> Upon receiving the non-party Movant's first Motion to Quash the Plaintiff's Subpoena to Produce Documents and supporting affidavits, the [Nasufi] decided to file a Motion for Leave asking the Court for permission to amend its Complaint by adding the individual owners of the Defendant King Cable Inc., Amanda & Corey Hong.
> On May 24, 2017, the Court issued its Order denying the Plaintiff's Motion for Leave to Amend Complaint. The Court identified that this case

was originally filed in October 2015. The Court reasoned that the Plaintiff has had ample time to amend its pleadings, to include a six (6) month extension on the original Scheduling Order.

*Id.* at 2-3.

Nasufi responds that

> DComm did not serve written objections to Plaintiff's Subpoena and does not object on relevance grounds. Instead, DComm moves to quash the Subpoena in its entirety on the grounds that it is unduly burdensome, that DComm's agreement with Time Warner is confidential, and that 14 days is too short of a time frame to comply. DComm, however, makes only naked assertions and fails to explain why quashing Plaintiff's Subpoena is necessary to protect DComm. *First*, Plaintiff's document requests are limited, specific, and narrowly-tailored. DComm did not object to relevancy. *Second*, the Subpoena expressly contemplates protecting confidential information, and additional protections, such as a protective order, are available if needed. *Third*, DComm offers no authority or evidence that 14 days is unreasonably short, especially in light of the Subpoena's limited nature. The Court should deny DComm's motion and compel DComm to produce the requested documents either as served or modified.

Dkt. No. 92 at 3.

**Legal Standards**

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena commanding a nonparty "to whom it is directed to ... produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." FED. R. CIV. P. 45(a)(1)(A)(iii).

"Federal Rule of Civil Procedure 45 'explicitly contemplates the use of subpoenas in relation to non-parties' and governs subpoenas served on a third party ... as well as motions to quash or modify or to compel compliance with such a subpoena." *Am. Fed'n of Musicians of the U.S. & Canada v. SKODAM Films, LLC*, 313 F.R.D. 39, 42 (N.D.

Tex. 2015) (quoting *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009)).

Under Rule 45, "[a] subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(2)(A); *see also* FED. R. CIV. P. 45(a)(1)(C) ("A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises ... may be set out in a separate subpoena.").

Rule 45(d)(1) mandates that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and that "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." FED. R. CIV. P. 45(d)(1). Further, Rule 34 provides that a document request "must describe with reasonable particularity each item or category of items to be inspected" or produced, FED. R. CIV. P. 34(b)(1)(A), and, although Rule 34 governs document discovery from a party and not a non-party, *see* FED. R. CIV. P. 34(c), this reasonable particularity requirement should apply with no less force to a subpoena's document requests to a non-party, *see generally Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

Rule 45(d)(2)(B) requires that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated

in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested" – and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." FED. R. CIV. P. 45(d)(2)(B).

"If an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection. (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." FED. R. CIV. P. 45(d)(2)(B).

Timely serving written objections therefore suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order. *See* FED. R. CIV. P. 45(d)(2)(B)(ii); *Am. Fed'n*, 313 F.R.D. at 44. On the other hand, "[t]he failure to serve written objections to a subpoena within the time specified by Rule [45(d)(2)(B)] typically constitutes a waiver of such objections, as does failing to file a timely motion to quash." *Am. Fed'n*, 313 F.R.D. at 43 (internal quotation marks omitted). Under Federal Rule of Civil Procedure 45(d), "[e]ither in lieu of or in addition to serving objections on the party seeking discovery, a person can 'timely' file a motion to quash or modify the subpoena" under Federal Rule of Civil Procedure 45(d)(3)(A). *In re Ex Parte Application of Grupo Mexico SAB de CV for an Order to Obtain Discovery for Use in a Foreign Proceeding*, No. 3:14-mc-73-G, 2015 WL

12916415, at *3 (N.D. Tex. Mar. 10, 2015), *aff'd sub nom. Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573 (5th Cir. 2016); *accord Monitronics Int'l, Inc. v. iControl Networks, Inc.*, No. 3:13-mc-134-L-BN, 2013 WL 6120540, at *1 (N.D. Tex. Nov. 21, 2013) ("Rule 45 does not define a 'timely motion' but does provide that, if the subpoenaed party chooses to serve objections instead of moving to quash, '[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.' FED. R. CIV. P. 45(c)(2)(B)."); *cf. Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 451 (N.D. Tex. 2015). Thus, "[i]n the majority of cases, a person – whether a traditional party (i.e., a plaintiff or defendant) or a non-party – waives objections if he/she/it fails either to serve timely objections on the party seeking discovery or to file a timely motion with the court." *Grupo Mexico*, 2015 WL 12916415, at *3.

And "a non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate [or unsupported] objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." *Id.* at 46 (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2004), and adopting "the explanations in *Heller* of what is required to make proper objections and how to properly respond to discovery requests"). Just as, "[a]lthough [Federal Rule of Civil Procedure] 34 governs document discovery from a party and not a non-party, *see* FED. R. CIV. P. 34(c)," "Rule 34(b)(1)'s reasonable particularity requirement should

apply with no less force to a subpoena's document requests to a non-party," so too "a non-party's Rule 45(d)(2)(B) objections to those requests should be subject to the same requirements facing a party objecting to discovery under Rule 34." *Am. Fed'n*, 313 F.R.D. at 44, 46.

This means that a non-party is subject to the requirements that an objection to a document request must, for each item or category, state with specificity the grounds for objecting to the request, including the reasons, and must state whether any responsive materials are being withheld on the basis of that objection; that an objection to part of a request must specify the part and permit inspection of the rest; that "general or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)"; and that the explanations in *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014), of what is required to make proper objections and how to properly respond to discovery requests apply equally to non-parties subject to a Rule 45 subpoena. *See Am. Fed'n*, 313 F.R.D. at 46; FED. R. CIV. P. 34(b)(2)(B)-(C).

As noted above, the target of a Rule 45 subpoena can also file a motion to quash or modify the subpoena. Under Federal Rule of Civil Procedure 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). The moving party has the burden of proof. *See Wiwa*, 392 F.3d at 818; *Williams v. City of Dallas*, 178 F.R.D. 103,

109 (N.D. Tex. 1998). "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

On a motion asserting undue burden, "[t]he moving party has the burden of proof to demonstrate 'that compliance with the subpoena would be unreasonable and oppressive.'" *Wiwa*, 392 F.3d at 818 (quoting *Williams*, 178 F.R.D. at 109 (internal quotation marks omitted)). The moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See S.E.C. v. Brady*, 238 F.R.D. 429, 437-38 (N.D. Tex. 2006); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005). "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818 (internal quotation marks and footnote omitted). "To determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (footnote omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* (footnote omitted).

"When a subpoena is issued as a discovery device, relevance for purposes of the

undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *Williams*, 178 F.R.D. at 110. Rule 26(b)(1) has been amended, effective December 1, 2015, to provide that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The Court also "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818 (footnote omitted). Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests "seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date"; "[t]he requests are not particularized"; and "[t]he period covered by the requests is unlimited." *In re O'Hare*, Misc. A. No. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012); *accord Turnbow v. Life Ptrs., Inc.*, No. 3:11-cv-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013).

Additionally, Rule 45(d)(3)(B) provides that, "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on

motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 45(d)(3)(B)(1). But "the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." FED. R. CIV. P. 45(d)(3)(C).

**Discussion**

As an initial matter, DComm timely filed its Motion to Quash under Rule 45(d)(3)(A) on June 2, 2017, three days before the June 5, 2017 compliance date. Contrary to Nasufi's assertion, DComm does, in its Motion to Quash, object on relevance grounds.

But the documents sought are relevant to Nasufi's claims against King Cable. "Rule 26(b)(1) defines the scope of what is discoverable not as any nonprivileged facts but, more broadly, as 'any nonprivileged matter.' That is, the scope of discovery is not limited simply to 'facts,' but may entail other 'matters' that remain relevant to a party's claims or defenses, even if not strictly fact-based." *Samsung Elecs. Am., Inc. v. Chung*, ___ F. Supp. 3d, No. 3:15-CV-4108-D, 2017 WL 2832621, at *26 (N.D. Tex. June 26, 2017) (internal quotation marks omitted).

Rule 26(b)(1), surely, allows Nasufi to seek discovery as to the matter of whether DComm is a potential successor at issue given the potential that Nasufi may be barred from filing a later suit against DComm's successors through the doctrine of claim

preclusion. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499-500 (5th Cir. 2004) (describing claim preclusion as a doctrine that bars a party from relitigating the same lawsuit against the same defendant or a party in privity with that defendant).

The documents and electronically-stored information that Nasufi seeks are therefore relevant both to an analysis of whether DComm could face successor liability under the FLSA and, more importantly, to Nasufi's pleaded claim against King Cable, on which a motion for default judgment is pending. "Under Rule 26(b)(1) and Fifth Circuit case law, discovery requests must seek information that is relevant to the parties' claims or defenses as pleaded and may not be used only to find new claims or defenses." *Id.* at *39. But "[d]iscovery that is relevant to the parties' claims or defenses may also support amendment of the pleadings to add a new claim or defense that affects the scope of discovery." *Id.* at *26 (internal quotation marks omitted).

DComm asserts that they are not relevant because "there is absolutely no legal relationship between [DComm] and Defendant King" Cable. Dkt. No. 89-3 at 9. But that is what Nasufi seeks documents to assess. DComm seeks to avoid discovery into the possibility that it may be considered a successor for FLSA liability purposes by demonstrating to the Court that it should not be considered a successor to King Cable for these purposes. *See generally Washington v. Patterson-UTI Energy, Inc.*, No. 5:16-CV-130-RP, 2016 WL 3081060, at *3 n.4 (W.D. Tex. May 31, 2016) ("Every federal court to address the issue of whether successor liability is available under the FLSA has determined that it is."). Even with the protections afforded a non-party under Rule 45, the Court does not generally decide discovery matters based on another party's or

non-party's "'strong belief in the merits of [a party's] litigation positions.'" *Heller v. City of Dallas*, 303 F.R.D. 466, 489 (N.D. Tex. 2014) (quoting *Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10cv00238, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012)).

The Court determines that, under the particular circumstances here, discovery from a third party as to possible successor liability for alleged FLSA violations pleaded against a named defendant is a "matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," FED. R. CIV. P. 26(b)(1) – with one exception. The Court finds that, considering the needs of the case and possible confidentiality concerns, DComm should not be required to comply with Request No. 8 in the Amended Subpoena, seeking copies of agreements between DComm and Time Warner Cable/Spectrum. Otherwise, the parties can negotiate and submit for the Court's consideration any confidentiality agreement or protective order that DComm may believe that it requires beyond, as Nasufi notes, the Amended Subpoena's providing that any document or electronically-stored information that is responsive to a request and deemed confidential by DComm may be marked "Confidential" and that such documents or electronically-stored information will not be used for any purpose other than this lawsuit.

The Court cannot accept DComm's undue burden objections for similar reasons.

The assertions are conclusory and unsupported by specific facts as to the nature and extent of any burden in complying with the Amended Subpoena and turn, in the end, on DComm's assertion that it is not King Cable's successor. *See* Dkt. No. 89-3 at 13-14. Of course, "[a] party or non-party cannot produce what it does not have." *ORIX USA Corp. v. Armentrout*, No. 3:16-mc-63-N-BN, 2016 WL 4095603, at *5 (N.D. Tex. Aug. 1, 2016) (internal quotation marks omitted). But reporting that DComm does not have requested records in its possession, custody, or control is the stuff of a written response to the requests in the Amended Subpoena, not a basis to quash the request.

Similarly, DComm does not explain how Nasufi can obtain much of what he seeks in the Amended Subpoena from the named defendants in this case. On the record before it, the Court does not find that Nasufi should be required to further pursue the subpoenaed material and information from King Cable or Gonzalez before obtaining it from DComm.

Finally, the Court will not quash the Amended Subpoena on the basis of DComm's objection that Nasufi failed to allow a reasonable time to comply, where, because of DComm's filing its Motion to Quash, the compliance deadline has passed and will not be enforced.

Considering all of the circumstances here and the Court's ruling above, the parties will bear their own expenses, including attorneys' fees, in connection with Non-Party DComm, Inc.'s Motion to Quash Amended Non-Party Subpoena to Produce Documents [Dkt. No. 89-3].

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Non-Party DComm, Inc.'s Motion to Quash Amended Non-Party Subpoena to Produce Documents [Dkt. No. 89-3]. The Amended Subpoena served on DComm, Inc. is quashed as to Request No. 8 only, and DComm, Inc. must otherwise serve written responses – but not objections, the time for which has passed – to and produce all nonprivileged and responsive documents, electronically-stored information, and other tangible things as requested by the Amended Subpoena. The Court further ORDERS DComm, Inc.'s counsel and Plaintiff Hamdija (Frank) Nasufi's counsel to confer and attempt in good faith to reach an agreement on the deadline for DComm, Inc. to complete its compliance with the Amended Subpoena as ordered by the Court. DComm, Inc. and Plaintiff Hamdija (Frank) Nasufi must file a joint status report by **August 11, 2017** to inform the Court of the agreed deadline or, if agreement cannot be reached, the competing proposed deadlines for the Court's consideration and determination.

SO ORDERED.

DATED: August 4, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE